IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


| | | |
|---|---|---|
| **MICHAEL MATTIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 2:17-cv-11169** |
| | ) | |
| **CITY OF CENTER LINE, MICHIGAN, DENNIS CHAMPINE, in his official capacity as City Manager for the City of Center Line, and WILLIAM DEMPSEY, individually and in his official capacity as Sergeant for the City of Center Line Police Department,** | ) ) ) ) ) ) ) ) ) ) | **VERIFIED COMPLAINT** |
| | ) | |
| **Defendants.** | ) | |

COMES NOW the Plaintiff, Michael Mattia, and avers the following:

### INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1988, challenging City of Center Line ordinance § 46-146 as applied and City of Center Line ordinance § 1510 on its face and as applied, so as to ban display of handheld signs on public sidewalks in the City of Center Line.

2. Plaintiff Michael Mattia seeks injunctive relief, declaratory relief, and nominal damages against Defendants City of Center Line, Michigan, Dennis Champine, in his official capacity as City Manager for City of Center Line, and

William Dempsey, individually and in his official capacity as Sergeant for the City of Center Line Police Department.

3.     This action is premised on the right to free speech and due process guaranteed in the First and Fourteenth Amendments to the United States Constitution.

4.     Defendants' actions have deprived and will continue to deprive Plaintiff Michael Mattia of his fundamental rights provided in the First and Fourteenth Amendments to the United States Constitution.

5.     Each and every act of Defendants alleged herein was committed by Defendants under the color of state law and authority.

<b>JURISDICTION AND VENUE</b>

6.     This Court has jurisdiction over Plaintiff's free speech and due process claims under 28 U.S.C. §§ 1331 and 1343 to give redress for the deprivation of constitutional rights.  This Court has jurisdiction over Plaintiff's request for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

7.     This Court, sitting in the Eastern District of Michigan, has proper venue over this matter under 28 U.S.C. § 1391(b) because all claims set out herein arise in this district and all of named Defendants reside this district.

2

## PLAINTIFF

8.     Plaintiff Michael Mattia ("Mattia") is a resident of the City of Center Line, Michigan.

## DEFENDANTS

9.     Defendant City of Center Line ("Center Line"), Michigan is a municipal corporation established, organized, and authorized under and pursuant to the laws of the State of Michigan.

10.     Defendant Dennis Champine ("Champine") is the City Manager for Center Line.  He is sued in his official capacity.  Among other duties, he is responsible for overseeing the administration of all city departments, including the Center Line police department, establishing public safety responsibilities, and issuing municipal civil infraction citations for violating ordinances of Center Line.

11.     Defendant William Dempsey ("Sgt. Dempsey") is a sergeant for the Center Line police department.  He is sued in his individual and official capacities. Sgt. Dempsey is responsible for enforcing Center Line laws and ordinances.

## STATEMENT OF FACTS

**Mattia Seeks to Share his Views about Abortion**

12.     Mattia is a Christian who earnestly seeks to share his religiously-based views about abortion in public.

3

13. Mattia's basic message is God loves all people and offers forgiveness and healing, including those affected by abortion.

14. As informed by his religious faith, Mattia believes a human fetus inside the womb is a living person made by God and created in the image of God. Mattia believes abortion is the wrongful killing of an innocent person and an affront to God.

15. Mattia typically conveys his beliefs about abortion by holding a sign on a public sidewalk. He finds a public area near his residence and stands on a public sidewalk next to a well-traveled street.

16. Mattia uses handheld signs because this method of communication gives him the best opportunity to reach a large number of people with his message. He believes signs are highly effective for conveying his message and communicating to people, whether his audience is nearby or far way, standing still or moving, consisting of pedestrians or drivers and riders in vehicles.

17. Mattia further believes signs are also a practical way to communicate because they are inexpensive and can be used on a recurring basis.

18. Through his signs, Mattia seeks to communicate his abortion message in a profoundly accurate way so the general public can fully understand what abortion is and what it does.

4

19. Consequently, Mattia frequently uses signs with pictures of aborted fetuses on them.

20. Mattia occasionally uses signs containing words only, but to fully convey his message about abortion, Mattia believes he must communicate the actual, physical effects and outcomes of the abortion procedure itself, illustrating the physical harm associated with abortion.

21. Mattia typically puts his cell number on the sign he carries so he can discuss his abortion views with anyone who is interested.

22. Mattia does not seek a crowd when he displays a sign and he is not likely to draw a crowd.

23. Mattia does not block pathways or obstruct pedestrian access on public sidewalks. He lets others pass by him while he is engaging in his expression.

24. Mattia does not display his signs in a way that would block or obscure traffic signs or signals, or otherwise impede the vision of drivers. He keeps his signs and himself from protruding into the street.

25. Mattia does not ask for money or solicit in any other way. He only wants to convey his beliefs about abortion with others.

26. Mattia does not harass anyone. He does not advocate for violence against abortion providers or supporters.

27.     Mattia has participated in this type of expression with signs presenting abortion messaging for almost two decades and has done so primarily in the State of Michigan.

28.     Over the last 5 years, Mattia has ventured out alone and stood on public sidewalks and ways and shared his views on abortion through signage. Weather permitting, Mattia conducts this activity 4 or 5 days a week and for 2 to 4 hours a day.

29.     In conducting this expressive activity, Mattia has occasionally interacted with police about his signs and their purpose, but until the incident in Center Line, police officers had consistently acknowledged his First Amendment right to use a sign and let him display it.

**Mattia is Banned from Using "Disturbing" Sign on Public Sidewalk**

30.     Mattia moved to Center Line in the early part of July, 2016.

31.     Soon thereafter, Mattia attended an open city hall meeting in Center Line regarding the repair and replacement of city sidewalks that included remarks from City Manager Champine.  At the conclusion this meeting, Mattia approached Champine, introduced himself, and the two exchanged pleasantries.

32.     Following his move, Mattia continued to go out and conduct his expressive activities, on an almost daily basis.

33.     Mattia initially went to neighboring cities to engage in these activities

6

because he was more familiar with the other areas.  But, as Mattia settled in and became more acquainted with Center Line, he visited public places in the city and held up his signs pertaining to abortion on public sidewalks.

34.    Mattia conducted his expressive activity with signs containing abortion messages, and particularly, signs with pictures of aborted fetuses, several times on a public sidewalk just south of Freeway 696 in Center Line and he did so without incident.

35.    On August 26, 2016, Mattia decided to display his views about abortion on public sidewalks at or near the intersection of E. 10 Mile Rd. and Van Dyke Ave. in Center Line.

36.    Mattia chose this particular spot because it is located in downtown Center Line and has significant vehicular traffic passing through it.  This venue offers Mattia a unique opportunity to reach many residents of the city with his message in a short period of time.

37.    Mattia arrived at around 5:00 p.m. that day, on August 26.  He parked his car and walked directly to the public sidewalk located on the southeast corner of the intersection of E. 10 Mile Rd. and Van Dyke Ave., in front of an empty gas station, and proceeded to share his abortion message with a sign.

38.    Mattia brought with him a sign made of Styrofoam backing and was relatively light to carry.

7

39.    As is his custom, the sign Mattia brought with him contained a picture of an aborted fetus as the backdrop on both sides.  On one side, the phrase "Abortion: God Forgives and Heals" is superimposed on the picture and on the other side, the phrases "God Forgives, Heals Abortion," "Women Do Regret Abortion," and "Men Regret Lost Fatherhood" are placed over another picture. The side with the additional phrasing covered more of the image than the other. Both sides showed Mattia's cell number.

40.    Once he became situated, Mattia displayed his sign, walking with it, on the sidewalks adjacent to Van Dyke and 10 Mile Road.

41.    The sign is not affixed to a stick or pole.  Mattia held it at chest level as he walked, flipping it around approximately every 15 seconds so people going through the intersection could see and read both sides of the sign.

42.     Mattia kept himself and his sign entirely on the sidewalk at all times. He never projected any part of his body or sign into the streets.

43.    Mattia did not obscure view of traffic signs, signals, or other vehicles at the intersection with his sign.

44.    Soon after he arrived, an unidentified female came to the intersection and stood about 5 to 7 feet away from him.  She held up a sign stating "Don't listen to this guy," or something similar, with an arrow pointing towards Mattia.

45.     The interaction between the two was peaceful and cordial at all times. The protestor did not try to block Mattia or keep anyone from seeing his sign. Mattia did not try to interfere with her expression.  They had a brief conversation about abortion, but, otherwise, did not speak with each other.

46.     Mattia continued with his expressive activity at this location for approximately one hour without causing a disturbance.  He did not notice anyone having difficulty driving at or through the intersection.

47.     Nevertheless, at around 6:00 p.m., Sgt. Dempsey and Officer Andy Percha of the Center Line police department approached Mattia about his sign.

48.     Sgt. Dempsey abruptly ordered Mattia to show his driver's license, and Mattia provided his personal information.

49.     After taking down his information, Sgt. Dempsey informed Mattia that he would not be allowed to display his sign.

50.     Perplexed by the order, Mattia inquired as to why. Sgt. Dempsey answered that they had received complaints about the messaging of the sign.

51.     Mattia knew he had a constitutional right to use the sign.  Having interacted with other police officers about this issue in the past, Mattia knew his sign constituted protected free speech.  He raised his constitutional right to speak even if someone finds the content of his sign offensive.

9

52. Sgt. Dempsey indicated the First Amendment did not apply to the situation, but told Mattia to wait a minute, as he went back to his police car to make a phone call.

53. While Sgt. Dempsey was in his vehicle, Officer Percha remained with Mattia, and required Mattia to keep his sign out of sight. As they were waiting, Mattia and Officer Percha remained where they were and engaged in small talk.

54. Approximately 20 minutes later, Sgt. Dempsey returned from his vehicle, indicating that he had discussed the sign issue with his superiors. Sgt. Dempsey told Mattia he needed to leave the area and take his sign with him.

55. Mattia was disappointed with this stance. He reiterated his First Amendment right to display a sign on a public sidewalk even if someone takes offense to the message.

56. Sgt. Dempsey disagreed with Mattia. The sergeant indicated a sign with mere text would be appropriate, but Mattia's sign, containing an image of aborted fetus, is not.

57. The sergeant concluded that Mattia's sign is not constitutionally protected because it is "so shocking" to see it.

58. Sgt. Dempsey went on to say that Mattia's activity in holding the sign violated the law for disturbing the peace. The sergeant elaborated that he had checked with his superiors on this point and he knew what he was talking about.

59.   Sgt. Dempsey added that a simple drawing on a sign that was not as "vile" or "grotesque" would be allowed, but Mattia's sign prompted people to call and complain, and was thus not covered by the First Amendment.

60.   Mattia believed the sergeant was mistaken, that police could not censor his sign just because people complained.  He referenced various law enforcement agencies in other places who acknowledged his freedom of speech and let him use that particular sign.  He also mentioned legal precedent upholding the protected nature of his speech.

61.   Sgt. Dempsey retorted that Mattia and his sign would have to move on because he was disturbing the peace, causing people to call the police.

62.   Mattia questioned how he could cause a disturbance without interfering with pedestrian or vehicular traffic.

63.   In response, Sgt. Dempsey reminded Mattia that people were calling the police about his sign.  He added that the sign was disturbing on a "psychological" level.

64.   Mattia brought up his First Amendment rights, but the sergeant told Mattia to forget the Constitution because his sign was causing a disturbance in violation of the ordinance, due to the fact that people were calling into the police department and complaining about his sign's message.

11

65.     Sgt. Dempsey elaborated that he was just following the law, but he not identify any ordinance Mattia was supposedly breaking.

66.     Mattia asked if he could see the ordinance.  Sgt. Demsey could not give a specific reference number, but referred Mattia to a website containing city ordinances and told him to look it up.

67.     Upon Mattia asking what would happen to him if he refused to put away the sign,  Sgt. Dempsey warned he would be criminally cited and/or arrested for violating the breach of peace ordinance.

68.     Unable to convey his message without a sign, and fearing arrest for use of his sign, Mattia left at around 6:30 p.m. that evening and has not displayed a sign on a public sidewalk in the city since.

**Mattia's Attempts to Resolve Issue**

69.     Mattia hoped to resolve the issue informally. As Sgt. Dempsey suggested, Mattia researched the breach of peace law in the Center Line ordinances online and discovered Center Line ordinance § 46-146 Breach of Peace.

70.     Section 46-146 reads:  "Any person who shall make or assist in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace and good order of the city are disturbed, shall be guilty of a breach of the peace, and disorderly conduct."

12

71.    Reading the ordinance, Mattia found the subjective and broad language troubling, and was concerned how the ordinance was construed to apply to his sign use.

72.    Seeking to resolve the matter, on August 31, 2016, Mattia went to city hall to ask city manager Champine about the application of § 46-146 to his expressive activity.

73.    Mattia went to the front desk and informed the receptionist he would like to meet with Champine about a concern of his regarding application of an ordinance to his speech.  He did not specify the ordinance.

74.    A few minutes later, Champine came out in the lobby, holding a piece of paper, and ushered Mattia into a nearby conference room.

75.    In the meeting that followed, Champine told Mattia that Sgt. Dempsey had filled him in on the situation and he handed Mattia a copy of § 46-146, identifying that ordinance as applicable to Mattia's sign use.

76.    Mattia advised he was already familiar with the ordinance, but did not believe it should apply to his sign. He pointed out that an application requires a broad interpretation of "trouble" or "improper diversion" as well as a broad interpretation of a "peace…disturb[ance]."  He urged that anyone could claim to be disturbed by his message and did not believe the city could shut down his speech on this basis.

77.   Champine agreed the language in § 46-146 is subjective, but told Mattia that he would have to show him case law indicating the application is unconstitutional before he could instruct the police department to refrain from enforcing it against Mattia.

78.   Champine also mentioned the cost and bother associated with the police having to field complaints about the sign, suggesting they needed to shut down Mattia's sign display to save money for the city.   Mattia left the meeting unsatisfied.

79.   Recalling Champine's request to produce case law supporting his constitutional rights, Mattia contacted counsel, and subsequently, through counsel, sent a  letter dated September 14, 2016, to Champine, the Mayor of Center Line, and the Director of Public Safety.

80.   In this letter, Mattia's counsel provided case law explaining why the ban on Mattia's sign use and the application of § 46-146 to Mattia's peaceful expression is unconstitutional.   Mattia asked the city to assure that it would no longer prohibit display of his signs on public sidewalks, specifically, at the intersection of Van Dyke Ave. and 10 Mile Rd.

81.   By letter dated October 20, 2016, the city responded, but no relief was forthcoming.  In this correspondence, Center Line confirmed that Mattia will not be allowed to display his sign on any public sidewalk in the city.

14

82.     Center Line ignored Mattia's concerns about the application of § 46-146 to Mattia's sign use.

83.     In lieu of relying on § 46-146 as a basis, Center Line, in this correspondence, invoked various sections of Center Line ordinance § 1510 as basis for banning Mattia's signs, specifically, the following:

- No signs or billboard on any street corner which would obscure the vision of drivers using said streets, or conflict with the traffic-control signals at the intersection of any street. Sec. 1510(3)(f).

- Signs and billboards shall be expressly prohibited from all public rights-of-way and dedicated public easements.  Sec. 1510 (3)(k).

- Any sign that would project into any public right-of-way or other accessway. Sec. 1510(4)(o).

- Sidewalk signs. Sec. 1510(4)(r).

84.     Center Line informed that these aforementioned sections of § 1510, construed and taken together as a whole, "prohibits **all** signs, notwithstanding the content, displayed on any street corner, public right-of-way or sidewalk." (emphasis in letter).

85.     From which, Center Line concluded that Mattia's display of his sign on the public sidewalk is prohibited by § 1510.

86.     Center Line's response compounded Mattia's concerns.  Failing to repudiate or even address the application of § 46-146 to Mattia's sign use, that threat remained intact.   Also, by virtue of the letter itself, Center Line

15

unequivocally informed Mattia that it would apply § 1510 to ban his desired sign use in the future.

87.    The new, additional basis of § 1510 not only barred his sign with pictures of aborted fetuses, but "all" of his signs relating to abortion, even those containing mere text.

**Restrictions Continue to Ban Mattia's Use of Handheld Signs on Public Sidewalks**

88.    Mattia now fears to display his sign with a picture of aborted fetus or any other sign conveying an abortion message on any public sidewalk in Center Line due to the threat of criminal sanction.

89.    The complete ban on Mattia's sign use restricts and deters his constitutionally-protected expression in traditional public fora and constitutes irreparable harm to him.

**FIRST CAUSE OF ACTION: Center Line § 46-146 - Breach of Peace**

**Violation of Free Speech**

90.    Mattia's display of a sign constitutes protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

91.    Defendants' application and enforcement of § 46-146 - Breach of Peace against Mattia's peaceful sign display:

   a. discriminates against speech because of its content;

   b. discriminates against speech because of its viewpoint;

16

    c.    creates a content-based heckler's veto that silences Mattia's expression due to hostile audiences;

    d.    allows for the exercise of unbridled discretion;

    e.    lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for expression; and

    f.    amounts to an unreasonable ban on protected speech in traditional public fora.

92. Defendants have no compelling or legitimate reason that can justify their total ban of Mattia's expression.

93. Defendants' application and enforcement of Center Line § 14-146 - Breach of Peace violates the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

WHEREFORE, Mattia respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

### Violation of Due Process

94. Defendants' application and enforcement of Center Line § 46-146 - Breach of Peace is vague and lacks sufficient objective standards to curtail the discretion of city officials and police officers. This discretion provides Defendants

ample opportunity to enforce § 46-146 in an *ad hoc*, arbitrary, and discriminatory manner.

95.   Defendants have no compelling or legitimate reason that can justify their vague enforcement of this law.

96.   Defendants' application and enforcement of § 14-146 against Mattia's peaceful sign display violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Mattia respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION: Center Line § 1510 - Signs and Billboards

### Violation of Free Speech

97.   Defendants' sign ordinance, Center Line § 1510, its application, and enforcement thereof:

   a.  are vague and overbroad;

   b.  bar the free speech of Mattia and other third-party citizens;

   c.  allow for the exercise of unbridled discretion;

   d.  lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

   e.  amount to an unreasonable ban on protected speech in traditional public fora.

18

98.    Defendants have no compelling or legitimate reason that can justify their on-going ban on Mattia's expression and all other signs in traditional public fora.

99.    Defendants' sign ordinance, § 1510, its application and enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

WHEREFORE, Mattia respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## Violation of Due Process

100.    Defendants' sign ordinance, § 1510, is vague, overly broad, and lacks sufficient objective standards to curtail the discretion of city officials and police officers.  This discretion provides Defendants ample opportunity to enforce the policies set out therein in an *ad hoc*, arbitrary, and discriminatory manner.

101.    Defendants have no compelling or legitimate reason that can justify their vague and overbroad law.

102.    Section 1510, its application and Defendants' enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

19

WHEREFORE, Mattia respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Mattia respectfully prays for relief in that this Court:

A.      Assume jurisdiction over this action;

B.      Enter a judgment and decree declaring that Center Line's application of Center Line Ordinance § 46-146 to ban Mattia's peaceful display of his sign on public sidewalks is unconstitutional as applied because it violates his constitutional rights as well as the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C.      Enter a judgment and decree declaring that Center Line Zoning Ordinance § 1510, totally banning the display of signs on public sidewalks is unconstitutional on its face and as applied to Mattia's desired speech because it violates his constitutional rights as well as the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D.      Enter a preliminary and permanent injunction enjoining defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Center Line Ordinance § 46-146, so as to ban constitutionally-protected speech of speakers, including

20

Mattia, who wish to use public sidewalks for expressive sign display;

E.     Enter a preliminary and permanent injunction enjoining defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Center Line Ordinance § 1510, so as to ban constitutionally-protected speech of speakers, including Mattia, who wish to use public sidewalks for expressive sign display;

F.     Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

G.     That this Court award Plaintiff Mattia nominal damages arising from the acts of the Defendants as an important vindication of his constitutional rights;

H.     That this Court award Plaintiff Mattia his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

I.     Grant such further relief as appears to this Court to be equitable and just.

Respectfully submitted,

s/ Nathan W. Kellum
Nathan W. Kellum*
TN BAR #13482; MS BAR # 8813
Center For Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
(901) 684-5485 – Telephone
(901) 684-5499 – Fax
Email: nkellum@crelaw.org

Attorney for Plaintiff Michael Mattia
*Application for Admission pending

s/ Jeff T. Schrameck
Jeff T. Schrameck
MI Bar No. P.69523
Schrameck Law, P.L.L.C
843 Penniman Ave.
Plymouth, MI 48170
734-454-5400 (office)
866-306-3642 (fax)
jeff@schramecklaw.com (email)

Attorney for Plaintiff Michael Mattia

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2017, the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system, and that a copy of the foregoing will be delivered to a process server for service on defendants.

s/ Jeff T. Schrameck
Attorney for Plaintiff

22

## VERIFICATION OF COMPLAINT

I, Michael Mattia, a citizen of the United States and a resident of Center Line, Michigan, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

_____
Michael Mattia